UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

THE ESTATE OF THOMAS EUGENE
MADDOX, SR. by and through his
administrator CAROLYN CALHOUN,
and MATTHEW MADDOX,

Plaintiffs,

v.                          6:12-cv-36

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

Defendants.

## ORDER

### I. INTRODUCTION

Before the Court is Defendant's ("Metlife") Motion for Summary Judgment. ECF No. 11.

Plaintiffs filed this action on March 16, 2012 in Toombs County Superior Court. *See* ECF No. 1-1 at 2. Metlife properly removed to this Court under 28 U.S.C. § 1441(b) approximately one month later. ECF No. 1. Plaintiffs seek damages related to the denial of an insurance claim under a policy issued by Metlife. *See* ECF No. 1-1 at 6-8. Subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1332(a). For the following reasons, the Court **GRANTS** Metlife's motion for summary judgment.

### II. FACTS

From October 19, 2005 to October 19, 2011, Thomas Eugene Maddox, Sr. ("T. Maddox") insured his home at 329 West Liberty Street, Lyons, Georgia 30436 ("Liberty house"), and its contents, through Metlife. ECF No. 13 at 1-2.

As to the house itself, the policy covered "the dwelling owned by *you* on the residence premises." ECF No. 11-2 at 12 (emphasis added). The policy defined "you" as "the person . . . named in the Declarations and if a resident of the same household: . . . the relatives of [the person named in the Declaration]." *Id.* at 11. The policy also insured "the legal representative of the deceased" should the "person named in the Declarations die[]," "but only with respect to the premises and property of the deceased covered by [the] policy *at the time of his death.*" ECF No. 12 at 9; 11-2 at 42 (emphasis added). The Declarations section of the policy contains only T. Maddox's name. ECF No. 11-2 at 4.

Unfortunately, T. Maddox passed away on June 14, 2010. ECF Nos. 18 at 3; 13 at 2. On October 22, 2008—almost two years prior to his death—T. Maddox transferred his entire interest in the Liberty house to his son, Matthew Maddox ("M. Maddox"), via warranty deed. ECF No. 13 at 2. In April of 2010, T. Maddox again transferred his entire interest to M. Maddox via warranty deed. *Id.*

After the transfers, T. Maddox continued to reside at the Liberty house. ECF No. 18 at 2. The property taxes and household bills all remained in T. Maddox's name, as did the Metlife policy ("policy"). *Id.* at 2-3. And T. Maddox continued to control all decisions regarding the use of the Liberty house up until he died. *Id.*

Eight years before T. Maddox's death, in 2002, M. Maddox began to live at the Liberty house with his future wife, Malicia. ECF No. 19 at 15-17. T. Maddox slept at the house with them some nights, spending others with M. Maddox's mother at her house in Metter,

Georgia. *Id.* at 15-16. In 2004, however, M. Maddox and Malicia moved back to Metter and built their marital residence on the same property M. Maddox's mother lived on. *Id.* at 18. T. Maddox continued to go back and forth between the Metter house and the Liberty house. *Id.* at 19. During this time, T. Maddox's health began to decline, though he remained capable of driving until somewhere between 2005-2006. *See id.*

After moving out of the Liberty house, M. Maddox "would sit with [T. Maddox] at night for four or five hours, give him his shot, cook his meals, [and do] whatever [was] needed to help him get to bed." *Id.* M. Maddox also cooked, dressed, and medicated his father in the mornings. *Id.* at 20. M. Maddox continued to keep personal items at the Liberty house and "was more than welcome to stay there" if, for example, "[he] had to work late, and . . . didn't feel like driving home." *Id.* at 21. M. Maddox, however, "lived with Malicia" in the house in Metter, and stayed at the Liberty house "no more than a dozen or so" times per year because "it really wasn't . . . that necessary." *Id.* at 21-23. For his occasional visits, M. Maddox maintained a bedroom at the Liberty house. *Id.* at 22. M. Maddox cared for his father up until T. Maddox's death on June 14, 2010. ECF No. 1-1 at 4. After T. Maddox died, M. Maddox never again spent the night at the Lyons house. ECF No. 19 at 49.

On June 26, 2011—one year and twelve days after T. Maddox died—a fire destroyed the Liberty house and its contents. ECF No. 13 at 2-3. During the year between his father's death and the fire, M. Maddox paid the policy's premiums and utility bills out of his personal checking account. ECF Nos. 18 at 3; 19 at 36-37. The policy also was renewed during that year, on October 19, 2010. ECF No. 13 at 1-2. At no point during that year did the policy or any utilities ever change from T. Maddox to M. Maddox's name. *Id.* at 3-4; ECF No. 19 at 40. In fact, M. Maddox was unaware the policy existed until the first premium payment came due after T. Maddox's death. ECF No. 19 at 49. Ultimately the policy was cancelled on September 27, 2011, with the cancellation effective October 31, 2011. *See* ECF Nos. 16-16; 19 at 59.

On October 10, 2011, the Toombs County Probate Court appointed Carolyn Calhoun administrator of T. Maddox's estate. ECF No. 18 at 4. One month later, Metlife issued a check to the estate for $13,885.37, covering only the loss of T. Maddox's personal property sustained in the fire. ECF No. 16-15.

### III. ANALYSIS

Plaintiffs assert that Metlife breached its obligations under the policy by not covering the loss of the house itself and are therefore liable for compensatory damages, as well as punitive and bad faith damages under O.C.G.A. § 33-4-6. *See* ECF No. 10 at 2. Plaintiffs first argue that M. Maddox is an insured under the policy because M. Maddox was a resident relative of T. Maddox's at the Liberty house. *See* ECF No. 17 at 4-5. In the alternative, Plaintiffs argue that T. Maddox's estate should recover because it continued as owner of the Liberty house, and thus an insured, by virtue of an implied trust between M. and T. Maddox. *Id.* at 5-7.

Metlife asserts (1) that M. Maddox cannot recover because he "does not qualify as an insured under the terms of the policy"; and (2) that T. Maddox's estate cannot recover

2

because T. Maddox did not own the Liberty house at the time of his death. ECF No. 12 at 2.

The Court proceeds as follows. First, this Order sets out the standard of review. Second, it evaluates whether M. Maddox qualifies as an insured and thus can recover under the policy. Finally, the Order addresses whether the estate of T. Maddox can recover under an implied trust theory of ownership.

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008). Courts, moreover, may consider all materials in the record, not just those cited by the parties. FED. R. CIV. P. 56(c)(3).

The moving party "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Reese*, 527 F.3d at 1268 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The nonmoving party then "may not rest upon the mere allegations or denials of [their] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

### B. M. Maddox's Claim

Plaintiffs claim that the policy covers M. Maddox individually. *See* ECF No. 17 at 4. Metlife asserts that M. Maddox cannot recover as an insured under the policy because he is not the named insured, nor is he a relative of T. Maddox's who resided in the same household with T. Maddox, the named insured. ECF No. 12 at 4. Therefore, Metlife contends, M. Maddox is precluded by the plain language of the policy from recovering. The Court agrees.

As a threshold matter, the Court must acknowledge that an "insured alone may sue on a policy of insurance." *Muhammad v. Allstate Ins. Co.*, 313 Ga. App. 531, 532 (2012). And the Court is likewise constrained to enforcing the terms of the policy—it cannot "extend[] the coverage contracted for" through expansive constructions of the policy's language. *Penn. Millers Mut. Ins. Co. v. H.M. Heule*, 140 Ga. App. 851, 854 (1976).

The policy provides coverage to homes *owned* by "you." ECF No. 11-3. "You" is defined in pertinent part as (1) the person "named in the Declarations" and (2) a relative of the named person, "if a resident of the same household." ECF No. 11-4.

3

T. Maddox is the only person named in the Declarations. *See* ECF No. 11-2 at 4. And M. Maddox, not T. Maddox, owned the Liberty house at the time of the fire.[1] ECF No. 13 at 2. So, for M. Maddox to qualify as "you," and thus for the policy to cover him, he must qualify as a resident relative of the named insured, T. Maddox, as of June 26, 2011, when the Liberty house burned.

No genuine dispute of material fact can exist as to whether M. Maddox resided at the Liberty house with T. Maddox when it burned. He did not. T. Maddox died on June 14, 2010, *see* ECF No. 13 at 2, over a year before the fire. *See id.* At the relevant time—when the loss occurred—the named insured therefore could not reside with anyone, much less M. Maddox.

As Metlife correctly points out, however, M. Maddox also cannot recover because he did not qualify as a resident of the Liberty house at the time of the fire (or, for that matter, at the time of T. Maddox's death). Although "questions of . . . residence are mixed questions of law and fact . . . ordinarily . . . for a jury to determine[,]" here no reasonable jury could find M. Maddox a resident of the Liberty house when it burned. *Daniel v. Allstate Ins. Co.*, 290 Ga. App. 898, 902 (2008); *State Farm Mut. Auto. Ins. Co. v. Gazaway*, 152 Ga. App. 716, 718-19 (1979).

To determine "whether a relative is a resident of the insured's household . . . the aggregate details of the family's living arrangements must be considered." *Rainey v. State Farm Mut. Auto. Ins. Co.*, 217 Ga. App. 618, 619 (1995). And "[o]f critical importance to [that] analysis is whether the family members have established and maintained separate households under different managements." *Id.* "[M]ere physical presence and transient visitation" cannot "make a person a resident of a household." *Id.* at 620.

In *Rainey*, a father tried to recover as a resident relative under his daughter's uninsured motorist policy. *Id.* at 618-19. The court granted summary judgment in favor of State Farm because the father lived in and maintained a separate apartment over which his daughter had no control. *Id.* at 620.

By contrast, the court in *Gazaway* found a substantial fact issue existed as to residency. In that case, a husband and wife lived in separate trailers, fifteen miles apart, at the time of the wife's death in a car accident. *See Gazaway*, 152 Ga. App. at 717-18. The couple, however, shared custody of two children, the husband paid the wife's bills on her trailer, which he owned, and they filed joint tax returns. *Id.* at 718. Critically, the court noted that under those facts, a jury could reasonably conclude the family constituted "a single domestic establishment under a single management and therefore a single household." *Id.* at 721.

From 2004 to the present, M. Maddox never resided at the Liberty house. Like the father in *Rainey*, who had his own apartment and managed his own affairs, M. Maddox lived with his wife and children in their own house and managed his own domestic and financial affairs. *See* ECF No. 19 at 18-21. M. Maddox may have cared for his father and

---

[1] Under Georgia law, "[c]overage is determined as of the time of the occurrence." *Higdon v. Ga. Farm Bureau Mut. Ins. Co.*, 204 Ga. App. 192, 193 (1992). The Court applies Georgia law because it must "apply the substantive law of the forum state" when sitting in diversity. *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011).

4

may have kept some personal items at the Liberty house to facilitate that care, but *his* household existed in Metter, with his wife, not at the Liberty house. *Id.*

And unlike the couple in *Gazaway*, where the husband paid for both households and both spouses were involved in raising the kids, M. Maddox and T. Maddox managed their own homes without the other's involvement. *Id.* M. Maddox certainly took good care of his father. But a resident of the same household he was not.

Finally, T. Maddox never validly assigned the policy to M. Maddox. The policy provides that transfer of ownership of the covered dwelling does not create an effective assignment of the policy. *See* ECF No. 11-6. Instead, "you" are required to obtain the written consent of Metlife to any assignment. *Id.* But T. Maddox never obtained Metlife's consent to transfer the policy to M. Maddox. Even after T. Maddox died, the policy remained in his name until the policy was cancelled. *See* ECF No. 16-16.

Plaintiffs argue that Metlife had constructive notice of a "change in circumstances" because Metlife accepted M. Maddox's payments. ECF No. 18 at 4. And Georgia courts have held that insurers can by their actions impliedly consent to assignments in lieu of a writing. *See State Farm Fire & Cas. Co. v. Mills Plumbing Co.*, 152 Ga. App. 531, 533 (1979). But never has acceptance of policy payments from the bank account of someone other than the named insured, without anything more, been held to be notice of an assignment of the policy.

In *Mills Plumbing*, the insured partnership changed its legal form to a corporation. 152 Ga. App. at 533. The court estopped the insurer from denying the assignment of the policy from partnership to corporation because the insurer had conducted an audit—discovering the incorporation and adjusting the premiums accordingly—and accepted premium payments drawn on the corporation's accounts. *Id.* at 534.

Here, however, Metlife lacked sufficient reason to suspect "changed circumstances" (either the transfer of ownership in 2008 or T. Maddox's death). Metlife conducted nothing like the insurer's audit in *Mills Plumbing*, nor did they have reason to. And although Metlife accepted payments from M. Maddox, those payments did not by themselves give Metlife "knowledge of the facts creating the" assignment, particularly in view of the fact that the property taxes and utilities remained in T. Maddox's name even after he died, much less after he transferred title to M. Maddox. *Mills Plumbing*, 152 Ga. App. at 535; ECF No. 13 at 3-4; ECF No. 19 at 40. So, Metlife had no constructive notice of an assignment. Nor did T. Maddox ever give actual written notice to Metlife. The Court therefore finds that no valid assignment occurred.

M. Maddox, as a matter of law, does not qualify as the named insured or a resident relative of the named insured. M. Maddox also indisputably owned the Liberty house at the time of the fire. Nor did a valid assignment of the policy from T. to M. Maddox ever exist. The Liberty house therefore was not owned by a person qualifying as "you" under the policy. M. Maddox is not entitled to payment for loss of the Liberty house and the Court must ***GRANT*** Metlife's motion for summary judgment against M. Maddox's claim.

5

### C. T. Maddox's Estate's Claim

Plaintiffs also assert that the policy covers the estate of T. Maddox ("Estate") under an implied trust theory of ownership. *See* ECF No. 17 at 5-7. They claim that the transfers of title to M. Maddox should not preclude recovery because T. Maddox maintained possession of the Liberty house and continued to pay all taxes and bills associated with it until his death. *See id.* Essentially, Plaintiffs argue that an implied trust operates in this case to make T. Maddox the owner at the time of his death, thus satisfying the policy's coverage provisions.[2]

Metlife argues first that no implied trust exists as defined by statute. *See* ECF No. 21 at 9. Metlife also asserts that Plaintiffs have failed to rebut the statutory presumption that transfers of property between family members are gifts and do not result in implied trusts. *Id.* at 10. The Court agrees with Metlife's first argument and finds the second inapplicable to this case.[3]

> O.C.G.A. § 53-12-130 provides that:
>
> A . . . trust [is] implied for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property under any of the following circumstances:
>
> (1) A trust is created but fails, in whole or in part, for any reason;
> (2) A trust is fully performed without exhausting all the trust property; or
> (3) A purchase money resulting trust as defined in subsection (a) of Code Section 53-12-131[4] is established.

Plaintiffs, however, premise their argument on a superseded version of the statute that stated trusts may be implied: "[w]henever the legal title is in one person but the beneficial interest, either from the payment of the purchase money *or from other circumstances*, is either wholly or partially in another." O.C.G.A. § 53-12-26 (repealed 2005) (emphasis added). But courts can no longer imply a trust when "other circumstances" indicate the beneficial interest in property is separate from legal title. Only if one of the three circumstances listed in § 53-12-130 is satisfied can a trust be implied. The Court's analysis proceeds from that foundation.

This case satisfies none of the three prongs of § 53-12-130. Neither party argues that T. Maddox attempted to create a trust that failed. *See* O.C.G.A. § 53-12-130(1). Likewise, neither party argues an express trust was ever created, much less fully performed. *See id.* at (2). A purchase money resulting

---

[2] The policy provides that if the named insured dies, "the legal representative of the deceased" is insured "with respect to the premises . . . of the deceased covered by th[e] policy at the time of [his] death." ECF No. 11-6.

[3] O.C.G.A. § 53-12-131(c) provides that if the transferor and transferee in a purchase money resulting trust context are (1) husband and wife; (2) parent and child; or (3) siblings, "a gift shall be presumed." Although T. Maddox is M. Maddox's father, no purchase money resulting trust existed because M. Maddox paid no consideration for the Liberty house.

[4] O.C.G.A. § 53-12-131(a) defines a resulting trust as one "implied for the benefit of the person paying consideration for the transfer to another person of legal title to real or personal property."

6

trust also does not exist in this case, as M. Maddox paid no consideration for the transfer of interest in the Liberty house. *See id.* at (3).

Undisputed evidence in the record, moreover, indicates that T. Maddox transferred the Liberty house to M. Maddox "to ensure that that property would be [M. Maddox's] after [T. Maddox's] death." ECF No. 19 at 33. T. Maddox apparently made the transfer as a "fall back if there was a dispute on the Will." *Id.* The transfer clearly succeeded in ensuring M. Maddox would own the Liberty house after his death. With the purpose of the transfer fulfilled, the Court will not imply a trust. *See In re Weigl*, No. 10-60341, 2011 WL 2321884, at *4 (Bankr. S.D. Ga. Jan. 18, 2011) (refusing to imply a trust when the purpose of the transfer—to ensure relatives obtain property outside of probate—was accomplished) (citing O.C.G.A. § 44-5-87 (requiring a donee to hold as trustee for the donor a gift whose specific, expressed or understood, purpose cannot be accomplished)).

Because the transfer here does not satisfy any provision of § 53-12-130, nor has the purpose of the transfer failed, the Court ***DECLINES*** to imply a trust for the benefit of the Estate. For the Estate to recover, however, T. Maddox had to own the Liberty house at his death. *See* ECF No. 11-2 at 11-12 (stating the policy covered "the dwelling owned by you[,] and defining "you" as "the person . . . named in the Declarations."). But T. Maddox held neither legal nor equitable title at the time of his death. Because T. Maddox, the deceased, did not own the Liberty house, the policy does not insure the Estate for the fire loss. Accordingly, Metlife's motion for summary judgment against the Estate's claim is ***GRANTED***.

## IV. CONCLUSION

The Court ***GRANTS*** Metlife's motion for summary judgment. The Plaintiffs' claims are all ***DISMISSED***.

This ___ day of November 2012.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA